

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PAUL SIMS, ET AL. | CIVIL ACTION NO. 09-0965 |
| VERSUS | JUDGE DOHERTY |
| SUNNYSIDE LAND, LLC, ET AL. | MAGISTRATE JUDGE HANNA |

*******************************************************************

| | |
|---|---|
| PAUL SIMS, ET AL. | CIVIL ACTION NO. 09-0975 |
| VERSUS | JUDGE DOHERTY |
| SUNNYSIDE LAND, LLC, ET AL. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM OPINION AND ORDER

Appellants Paul Sims, S.C. of Okaloosa Corp. ("SCO"), Charles Kenneth Breland, Water Canyon Holdings, LLC, Utah Reverse Exchange, LLC, and Range Creek Holdings ("Appellants") bring this appeal from two Orders of the United States Bankruptcy Court for the Western District of Louisiana, both of which were entered on April 15, 2009. The Orders – which are identical – were filed in two separate adversary proceedings filed within two related bankruptcy cases: *In re: Sunnyside Timber, LLC, et al.*, (Bankruptcy Case No. 00-51233) and *In re Sunnyside Land, LLC, et al.*, (Bankruptcy Case No. 00-51234). The specific orders that are the subject of the instant motion for leave to appeal are two Orders Denying Motions for Summary Judgment. Appellants have filed a motion for leave to appeal in each adversary proceeding – hence, the opening of two separate lawsuits in this Court – and have also filed Notices of Appeal with respect to those Orders. The parties have agreed, however, that this Court should rule first on the motions for leave to appeal, and

only if those motions are granted should this Court set briefing deadlines in connection with appeals on the merits [Doc. 9].

Considering the foregoing, the motions for leave to appeal in both of the above-captioned matters are now ripe for consideration.

## I. Factual and Procedural Background

The factual background of this matter has been set forth in the Bankruptcy Court's March 31, 2009 "Reasons for Decision," issued prior to the Court's Orders, which were entered on April 15, 2009."[1] Neither party has objected to the facts as set forth by the Bankruptcy Court, therefore, in order to give contextual basis to those facts and in the interests of creating a complete record, this Court will adopt the factual backgrounds as set forth by the Bankruptcy Court in its Reasons for Decision, as set forth hereinbelow:

In 2000, Sunnyside Land, L.L.C. ("Land"), and Sunnyside Timber, L.L.C. ("Timber," and, with "Land," "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code. The cases were subsequently converted to Chapter 7, and Elizabeth G. Andrus and Lucy G. Sikes were duly appointed Chapter 7 trustees of Land and Timber, respectively (together, the "Trustees").

In November 1997, the Debtors acquired approximately 26,000 acres of real property and timber in Utah (the "Utah Property") from William F. Barnes for purposes of harvesting timber. The debtors in the bankruptcy proceedings – Timber and Land – entered into promissory notes with Barnes (the "Sunnyside Notes") to finance the purchase. Timber also received a secured loan from St. Landry Bank. Barnes then collaterally assigned the Sunnyside Notes to Regions Bank & Trust

---

[1] A separate "Reasons for Decision" was issued in each adversary proceeding in the Bankruptcy Court; however, the "Reasons for Decision" are identical in both cases.

("Regions") as security for a loan. That obligation subsequently went into default and Regions threatened to foreclose. Prior to November 2000, an agreement was reached between Barnes and Sims, the sole shareholder of SCO, relating to the collection of the Sunnyside Notes. In order to prevent the foreclosure, Sims agreed to advance funds in exchange for sharing in the ultimate collection of the Sunnyside Notes. The Barnes Notes were subsequently sold by Regions to SCO and the collateral securing the Barnes Notes was assigned to SCO. Shortly after they purchased the Utah Property, Timber and Land began efforts to harvest the timber from the property and, to that end, commissioned a contractor to construct a road on the property in order to harvest timber on the property.

Difficulties with access to the area arose pre-petition, and these difficulties appear to be the major factor resulting in the bankruptcy proceedings. The fallout from the access problems resulted in extensive litigation in Utah state court and, ultimately, in the present bankruptcy cases. After protracted litigation, the Trustees, Regions, Sims, SCO, and the other major parties in the bankruptcy cases (with the exception of Barnes) reached a settlement that resolved most of the significant disputes in the bankruptcy. In this regard, the parties executed the Term Sheet as to Settlement of Sunnyside Land and Sunnyside Timber Litigation (the "Term Sheet"). The Bankruptcy Court entered an order approving the settlement on December 1, 2004.

The focus of the adversary proceedings before the Bankruptcy Court is the sale of the Utah Property pursuant 11 U.S.C. § 363, which was one of the central provisions of the parties' settlements. In that regard, the Term Sheet provided that:

(1) The Trustees were to conduct a sale pursuant to 11 U.S.C. §363;

(2) SCO would offer a credit bid of $6.3 million for the purchase of the Utah property owned

3

by Land;

(3) SCO would also offer a credit bid of $3.3 million for the purchase of the timber owned by Timber;

(4) If SCO's bid was not exceeded, the Trustees would transfer the property to SCO free and clear of any liens, claims or other encumbrances; and

(5) If SCO's bid was exceeded by a cash offer, SCO would receive a minimum of $9.6 free and clear of any liens, claims or other encumbrances. All claims, liens and encumbrances would attach only to proceeds in excess of $9.6 million.

On January 11, 2005, the Trustees filed a Notice of Sale of Real Property and Standing Timber Free and Clear of All Liens, Mortgages, Claims, Interests and Encumbrances (the "Sale Notice") stating that the Trustees would conduct a sale of the Utah Property pursuant to 11 U.S.C. §363. The Sale Notice provided the Trustees would sell the Utah Property to SCO or to the highest bidder at an auction set for February 1, 2005. The Sale Notice also included bidding procedures and requirements for prospective bidders. Specifically, the Sale Notice required bidders competing against SCO to submit a minimum cash bid of $9.7 million for the land and timber accompanied by a cash deposit of five percent (5%) of the amount bid. The Sale Notice further provided that competing bids and deposits had to be submitted to counsel for the Trustees at least five (5) business days before the auction – January 25, 2005 – and that the winning bidder had to close the sale within forty-five (45) days of the auction. The Sale Notice further required that bidders provide the Trustees with evidence of their financial qualifications and ability to close the sale within forty-five days.

SCO was the only party to submit a bid for the Utah Property by the January 25th bid deadline. SCO submitted the minimum credit bid set forth in the Term Sheet -- $9.6 million for the land and timber. On February 1, 2005, the Bankruptcy Court entered an order approving the sale of

4

the Utah Property to SCO. On June 30, 2005, Breland entered into a Purchase and Sale Agreement whereby he agreed to purchase the Utah Property from SCO for $13 million. The parties closed this sale on July 22, 2005, and Regions funded $9,496,400 of the purchase price on behalf of Breland.

On June 1, 2007, Land and Timber filed adversary proceedings in their respective bankruptcy cases against Breland, the Breland Entities, Sims, SCO, and the Mattie Kelley Trust.[2] Land and Timber allege the defendants in the adversary proceedings in Bankruptcy Court entered into an agreement to control the sale price of the Utah Property in violation of 11 U.S.C. §363(n).[3] Land and Timber contend Breland was a potential bidder for the Utah Property but agreed to purchase the Utah Property directly from SCO instead of submitting a competing bid in the Section 363 sale. As a result, Land and Timber contend SCO's opening $9.6 million credit bid was the sole bid, and the estate would have obtained a higher sales price had Breland submitted a competing bid.

Following discovery, defendants in the adversary proceedings filed motions for summary judgment seeking dismissal of Plaintiffs' Section 363(n) claims with prejudice. Sims, SCO, Breland, and the Breland Entities filed a joint motion for summary judgment. The Mattie Kelley

---

[2] Sims was the former trustee of the Mattie Kelley Trust, and Land and Timber contend the Trust received some of the proceeds from the sale of the Utah Properties to Breland.

[3] Section 363(n) provides:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

11 U.S.C. §363.

Trust filed a separate motion for summary judgment.[4]

All defendants moved for summary judgment on grounds the plaintiffs' Section 363(n) claims are barred by the one-year time limitation period contained within Rule 60(c) of the Federal Rules of Civil Procedure. For reasons that will be explained in detail below, the Bankruptcy Court disagreed and held a different statute of limitations applies in these cases. Finding there were genuine issues of material fact regarding whether the plaintiffs' claims were prescribed, the Bankruptcy Court denied the defendants' motions for summary judgment. The instant motions for leave to appeal followed.

## II.   Law and Discussion

### A. Appeal of Bankruptcy Orders to District Court

The source of district court jurisdiction over bankruptcy appeals can be found in 28 U.S.C. §158(a). Pursuant to 28 U.S.C. §158(a):

The district courts of the United States shall have jurisdiction to hear appeals

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees;

*and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.* An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. §158(a) (emphasis added).

---

[4] On July 23, 2009, this Court granted an order dismissing the Mattie M. Kelly 908 Trust as an appellant in the instant case pending before this Court [Doc. 12]. Accordingly, the Mattie M. Kelly 908 Trust is no longer a party to the instance lawsuits.

6

Rule 8001 of the Bankruptcy Rules addresses the manner of taking appeals in bankruptcy cases. Rule 8001(a) states "[a]n appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel as permitted by 28 U.S.C. § 158(a)(1) or (a)(2) shall be taken *by filing a notice of appeal* with the clerk within the time allowed by Rule 8002." Bankr. Rule 8001(a) (emphasis added). Rule 8001(b) states "[a]n appeal from an interlocutory judgment, order, or decree of a bankruptcy judge as permitted by 28 U.S.C. § 158(a)(3) shall be taken *by filing a notice of appeal*, as prescribed in subdivision (a) of this rule, *accompanied by a motion for leave to appeal* prepared in accordance with Rule 8003 and with proof of service in accordance with Rule 8008." Bankr. Rule 8001(b) (emphasis added). Thus, pursuant to Rule 8001(a) and (b), a notice of appeal is filed *both* when a party appeals a final bankruptcy order as of right, *and* when a party seeks leave of court to appeal an interlocutory bankruptcy order.[5]

The Appellants have filed the instant appeals and motions for leave to appeal the Bankruptcy Court's April 15, 2009 Orders in both adversary proceedings as interlocutory orders and have asked this Court to rule on the motions for leave to appeal before addressing the actual merits of the appeals.

Section 158(a) authorizes a district court to grant leave to appeal an interlocutory order from a bankruptcy court, but does not indicate the standard a district court should use in determining whether to grant leave to appeal. Additionally, the Fifth Circuit has not set down a hard and fast rule for determining when an interlocutory appeal should be allowed. See *Ichinose v. Homer National*

---

[5] Bankruptcy Rule 8002(a) states a notice of appeal must be filed shall within 10 days of the date of the entry of the judgment, order, or decree appealed from. The Court was unable, in its own independent research, to determine the time delays for the filing of a motion for leave to appeal. However, neither party disputes that the instant motions for leave to appeal are timely filed. Therefore, for purposes of this motion, the Court assumes the motions for leave to appeal are timely filed.

7

*Bank*, 946 F.2d 1169, 1176 (5th Cir.1991); *In re Hunt International Resources Corporation*, 57 B.R. 371, 372 (N.D. Tex. 1985). The Fifth Circuit has, however, stated "[t]he decision to grant or deny leave to appeal a bankruptcy court's interlocutory order is committed to the district court's discretion." *Stumpf v. McGee (In re O'Conner)*, 258 F.3d 392, 399-400 (5th Cir.2001), cited in *In re Verges*, 2007 WL 955042, *1 (E.D. La. 2007).

In *Ichinose*, the court stated:

> Nonetheless, the vast majority of district courts faced with the problem [of having no articulable standard] have adopted the standard under 28 U.S.C. §1292(b) for interlocutory appeals from district court orders. [Internal citations omitted]. **This standard consists of three elements: (1) a controlling issue of law must be involved; (2) the question must be one where there is substantial ground for difference of opinion; and (3) an immediate appeal must materially advance the ultimate termination of the litigation.** *Neshaminy*, 81 B.R. at 303.

946 F.2d at 1176. The *Ichinose* court expressly declined to state whether consideration of the Section 1292(b) factors is proper in the context of a motion for leave to appeal brought pursuant to Section 158(a).

Guided by the Fifth Circuit's pronouncement in *Ichinose*, district courts within the Fifth Circuit have tended to consider the Section 1292(b) factors in considering whether to grant leave to appeal an interlocutory order from a bankruptcy court.[6] *See, e.g.*, *Powers v. Montgomery*, 1998 WL 159944, *2 (N.D. Tex. 1998) ("While there is no set standard in this Circuit for determining whether to grant leave to appeal, the Fifth Circuit has acknowledged that the large majority of district courts faced with the problem have adopted the standard under 28 U.S.C. §1292(b) for interlocutory appeals from Bankruptcy Court orders."); *In re Turner*, 1996 WL 162110, *1 (E.D. La. 1996)

---

[6] In the absence of a definitive Fifth Circuit standard governing the issue before the Court, reference is made to the decisions of district courts within this circuit for guidance.

8

("Because §158(a) contains no criteria to guide the exercise of my discretion in granting or denying an interlocutory appeal, district courts have looked to standards governing interlocutory appeals in 28 U.S.C. §1292(b).").

In most of these cases, the district courts have added, "[b]ecause interlocutory appeals interfere with the overriding goal of the bankruptcy system, expeditious resolution of pressing economic difficulties, they are not favored." *Smith v. AET Inc.*, Ltd. 2007 WL 1644060, *5 (S.D. Tex. 2007), citing *In re Hunt Int'l Res. Corp.*, 57 B.R. 371, 372 (N.D.Tex.1985). Thus, pursuant to the legislative history of §1292(b), "interlocutory appeals should be granted only in *exceptional situations* where allowing such an appeal would avoid protracted and expensive litigation." *See, e.g., In re Turner*, 1996 WL 162110, *1 (emphasis added), citing *Clark-Dietz & Assoc. v. Basic Construction,* 702 F.2d 67, 69 (5th Cir. 1983); *Powers*, 1998 WL 159944, *2 ("Leave to appeal a bankruptcy court's interlocutory order should be granted only in circumstances which justify overriding the general policy of not allowing such appeals."); *In re Global Marine, Inc.*, 108 B.R. 1007, 1009 (S.D.Tex. 1988) ("The other standard frequently employed is whether "exceptional circumstances" warrant a grant of immediate appellate review.'").

### B. Prescription

The crux of the instant appeals – should this Court allow them to go forward – is whether the adversary proceedings instituted in the two related bankruptcy cases are prescribed. The Sale Order at issue was signed by the Bankruptcy Court on February 1, 2005. The adversary proceedings alleging price-rigging claims in the Bankruptcy Court were instituted on June 1, 2007.

Timber and Land allege their price-rigging claims against the defendants in the adversary proceedings in Bankruptcy Court pursuant to 11 U.S.C. §363(n), which states:

9

> The trustee may *avoid a sale* under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may *recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount*. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

11 U.S.C. §363(n) (emphasis added). As set forth above, Section 363(n) provides for either a damages claim or avoidance of the sale as possible remedies in a bid-rigging lawsuit.

In a nutshell, Appellants (the defendants in the adversary proceedings in Bankruptcy Court) contend Rule 60(b)(3), which grants relief from judgment on grounds of fraud and which is incorporated into Bankruptcy Rule 9024,[7] imposes a one-year statute of limitations on all actions

---

[7] Rule 60(b)(3) states:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> **(1)** mistake, inadvertence, surprise, or excusable neglect;
>
> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> **(3)** *fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;*
>
> **(4)** the judgment is void;
>
> **(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> **(6)** any other reason that justifies relief.

Fed.R.Civ.P. 60(b)(3) (emphasis added).

Rule 60(c) provides:

> *A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) [fraud]* <u>no more than a year after the entry of the judgment or order or the date of the proceeding</u>.

10

brought under Section 363(n) pursuant to Rule 60(c). Appellees (Timber and Land, the debtors in the adversary proceeding in Bankruptcy Court) disagree, contending the Louisiana statute of limitations for a cause of action for fraud is applicable.

### C. The Bankruptcy Court's Ruling

Section 363(n) supplements the general powers of a court to avoid a sale by giving the trustee the right to do so if the sale price is the product of bid rigging. *In re Clinton Street Food Corp.*, 254 B.R. 523, 529 (Bkrtcy. S.D.N.Y. 2000), *citing Robertson v. Isomedix, Inc. (In re International Nutronics, Inc.)*, 28 F.3d 965, 969 (9th Cir.1994) (citing 2 *Collier on Bankruptcy* ¶ 363.14 (15th ed. rev.1998)).[8] Nonetheless, §363(n) is subject to the rules governing the finality of judgments.

Ordinarily, a Section 363 sale order is *res judicata* with respect to any claims arising from the sale. *Robertson*, 28 F.3d at 968. *See also Matter of Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993) ("Our precedent clearly establishes that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for *res judicata* purposes, "even though the order neither closes the bankruptcy case nor disposes of any claim"); *Hendrick v. Avent,*

---

Fed. R. Civ. P. 60(b) and (c) (emphasis added).

> Rule 9024 of the Federal Rules of Bankruptcy Procedure states:
>
>> Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

Fed. R. Bankr. P. 9024.

[8] In the absence of controlling Fifth Circuit precedent, this Court has consulted district court cases and cases from other circuits addressing the issues before the Court. Although these cases are jot binding on this Court, the Court finds them persuasive and relevant to the issues to be decided.

11

891 F.2d at 586; *see also Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870 (5th Cir.1984). The power to avoid a sale order under Section 363(n) is an express exception to the finality of the order. *Robertson*, 28 F.3d at 968. However, the power to avoid a sale is not the only remedy available to an aggrieved party under Section 363(n). Rather, Section 363(n) provides for more than one type of relief, including allowing a suit for damages from a party that entered into an agreement to control a sale. In the instant case, the Bankruptcy Court – after analyzing cases that address the issue – concluded the time limitations set forth in Rule 60(c) do not apply to this case because the plaintiffs in the adversary proceeding have asserted only claims for damages; thus, the plaintiffs do not seek to avoid the sale.

In the absence of Fifth Circuit precedent addressing the issue, the Bankruptcy Court relied upon two cases in which bankruptcy district courts concluded the one-year limitation of Rule 60(c) does not apply to claims for *damages only* under Section 363(n). *See In re Taylorcraft Aviation Corp.*, 163 B.R. 734, 737 (Bankr. M.D. Penn. Oct. 28, 1993); *In re American Paper Mills of Vermont*, 322 B.R. 84, 90-91 (Bankr. D. Vt. Aug. 3, 2004). In *American Paper Mills*, the court held a Section 363(n) claim for damages that does not seek avoidance of the sale is not the equivalent of a Rule 60(b) motion for relief, and, therefore, is not subject to Rule 60(c)'s one-year time limit. Rather, the court concluded the appropriate statute of limitations for a Section 363(n) damages action was Vermont's statute of limitations for a fraud action. *Accord In re Taylorcraft Aviation Corp.*, 163 B.R. 734, 737 (Bankr. M.D. Penn. Oct. 28, 1993) (while actions to avoid a sale order under grounds contemplated by Rule 60 may be subject to that rule's one-year time limit, not all Section 363)(n) claims are subject to Rule 60; rather, court applied the Pennsylvania statute for fraud's two-year time limitation).

07-05041 - #196   File 03/10/10   Enter 03/11/10 14:56:58   Main Document   Pg 12 of 19

Appellants cite *In re Clinton Street Food Corp., supra,* in support of their argument that Rule 60(c)'s one-year limitation applies. However, in its "Reasons for Decision," the Bankruptcy Court noted *American Paper Mills* distinguishes *Clinton Street* on one very important ground: In *Clinton Street*, the bankruptcy court relied heavily on the "law of the case" doctrine by following the unpublished opinion of a prior judge who had handled the case and who had ruled the one-year time limit of Rule 60 applies to both equitable and legal claims brought under Section 363(n). 254 B.R. at 531. Therefore, the court in *Clinton Street* did not undertake a substantive analysis of the issue itself. Moreover, the trustee in *Clinton Street* sought not only a claim for damages, but also sought to avoid the sale,[9] making the facts of *Clinton Street* factually distinguishable from both the facts in *American Paper Mills* and the facts in the instant case. Accordingly, the court in *American Paper Mills* observed the *Clinton Street* case was less persuasive than the *Taylorcraft Aviation* case, as the *Clinton Street* case did not address the merits of whether Rule 60(c)'s one-year time limitation should apply to a damages claim, but merely adopted the prior judge's ruling as the "law of the case." In the instant case, the Bankruptcy Court agreed, finding the reasoning in *American Paper Mills* and *Taylorcraft Aviation* to be more persuasive on the issue.

Finding Rule 60(c)'s limitations period does not apply, the Bankruptcy Court properly noted "[i]n actions where a federally-created right is being enforced but there is no controlling federal statute of limitations, a federal court will ordinarily 'borrow' the most closely analogous state statute of limitations of the state where the district court is held, including its borrowing statute." *See In re Taylorcraft Aviation Corp.*, 163 B.R. at 738 (applying statute of limitations for Pennsylvania fraud

---

[9] *See In re Clinton Street Food Corp.*, 254 B.R. at 529 ("[b]ecause the Trustee is seeking to avoid the Sale Order by reason of defendants' alleged fraud, we characterize this §363(n) claim as a motion under Rule 60(b)(3), and apply its one year statute of limitations.").

13

statute), *citing* 2 Moore's Federal Practice ¶3.08[2]; *American Paper Mills*, 322 B.R. at 91 (applying statute of limitations for Vermont fraud action). Relying on the foregoing, the Bankruptcy Court concluded the "most analogous limitations period under Louisiana law" is the one-year liberative prescriptive period applicable to delictual actions pursuant to Article 3492 of the Louisiana Civil Code, which states:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

La. Civ. Code art. 3492 (West 2010). *See also City of Alexandria v. Cleco Corp.*, 2010 WL 290506 (W.D. La. Jan. 22, 2010) (J. Drell) (noting that, generally, under Louisiana law, fraud claims are considered to be delictual, and are subject to a one-year prescriptive period), *citing Shermohmad v. Ebrahimi*, 945 So.2d 119, 122 (La. App. 5th Cir. 2006); *Quibodeaux v. Medical Center of Southwest Louisiana*, 707 So.2d 1380 (La. App. 3rd Cir. 1998) (accord); *Jones v. Honeywell Int., Inc.*, 295 F.Supp.2d 652 (M.D. La. 2003) (accord). The Bankruptcy Court further concluded the running of prescription under Louisiana law may be tolled by the doctrine of *contra non valentem*, which "suspends the running of the prescriptive period for a limited category of claimants who are unable to bring suit." *See F.D.I.C. v. Barton*, 96 F.3d 128, 134 (5th Cir.1996).

In the instant matter, the Bankruptcy Judge noted the following in his Reasons:

Defendants contend prescription commenced at the time of the Trustees' section 363 sale because the plaintiffs had sufficient facts to place them on notice of a potential claim. Plaintiffs counter that none of the negotiations or agreements between Breland and Sims that are the subject of their claims were disclosed prior to the sale. Plaintiffs contend they did not learn of Defendant's alleged collusion until Breland was deposed during a June 23, 2006 deposition in another case – less than a year before this proceeding was filed. Plaintiffs offer the deposition testimony of Breland

07-05041 - #196   File 03/10/10   Enter 03/11/10 14:56:58   Main Document   Pg 14 of 19

as well as an affidavit of John Luster, former counsel for the Trustees, to support their contention that they were unaware of any negotiations or agreements between Sims and Breland. After considering the summary judgment record as a whole, the court concludes that Plaintiffs have offered substantial evidence supporting their position that this suit was filed within the one-year prescription period. Accordingly, genuine issues of material fact preclude summary judgment on the grounds of prescription.

### D. Arguments of the Parties

The substantive matters on appeal are not yet before the Court, as the parties have asked this Court to determine whether leave should be granted to file the substantive appeals. With respect to the motions before the Court at this time, this Court notes the burden is on Appellants to demonstrate all three elements under the Section 1292 test are met in this case before this Court will grant the motions for leave to file interlocutory appeals of the Bankruptcy Court's April 15, 2009 Orders. That is, Appellants must demonstrate: (1) a controlling issue of law is involved; (2) the question is one where there is substantial ground for difference of opinion; and (3) an immediate appeal will materially advance the ultimate termination of the litigation. *See Ichinose*, 946 F.2d at 1176. In addition to meeting all three elements, the Appellants must demonstrate the cases before the Court involve "exceptional circumstances [that] justify departure from the basic policy of postponing appellate review until after entry of a final judgment." After careful consideration of the parties' arguments, this Court concludes Appellants have not carried their burden with respect to these issues.

Appellants contend all three elements[10] are present in the instant case. Specifically, Appellants contend the proposed appeals involve controlling questions of law – *i.e.*, application of

---

[10] Appellants actually conflate elements no. 1 and 2 into one element. Notwithstanding the foregoing, Appellants contend all of the substantive requirements for an interlocutory appeal are met in this case.

15

Rule 60(c) under the facts and circumstances of these cases – as to which there is substantial ground for difference of opinion. Appellants point to the decisions in *Robertson v. Isomedix, Inc.*, 28 F.3d 965 (9th Cir. 1994) and *In re Clinton Street Food Corp.*, 254 B.R. 523 (Bankr. S.D.N.Y. 2000) as cases wherein courts have applied Rule 60(c) to bar actions like the instant action. Additionally, Appellants contend immediate appeals may advance the ultimate termination of this litigation, because if the Appellants win summary judgment at the adversary proceedings stage, the adversary proceedings in the Bankruptcy Court will be terminated. Appellants contend if this Court or the Fifth Circuit Court of Appeals later determines Rule 60(c) bars the instant claims, the parties will have wasted time and money trying the matter before the Bankruptcy Court. Thus, Appellants contend the interests of judicial economy and fairness dictate that the matter be taken up on appeal now.

Appellees disagree, contending this case does not present "exceptional circumstances" that warrant an interlocutory appeal. Appellees further contend the Bankruptcy Court denied the summary judgments because the Bankruptcy Court determined there are genuine issue of material fact with respect to whether – under the Louisiana rule for liberative prescription, as opposed to the prescriptive period contained within Rule 60(c) – plaintiffs' claims are time-barred. Therefore, the Appellees argue the proposed appeal does not present a "pure question of law" as required for an interlocutory appeal.

After review of the briefs, this Court concludes the issue before the Court is whether the prescriptive period found within Rule 60(c) applies in this case, or whether the Louisiana prescriptive period, which allows for tolling of the one-year prescriptive period for fraud under the theory of *contra non valentem*, applies. Although the Bankruptcy Court found there are genuine

16

issues of material fact with respect to whether the plaintiffs' claims are time-barred, that decision was made only *after* the Bankruptcy Court determined the prescriptive period in Rule 60(c) does not apply in this case. *That* determination decided a pure question of law. Therefore, this Court concludes a pure question of law is before the Court. That does not end the inquiry, however, because this Court must determine whether the question of law before it is a *controlling* question of law for which there is substantial ground for difference of opinion; and this Court must further determine whether an immediate appeal of this discreet issue would materially advance the ultimate termination of the litigation in both matters.

Neither party briefed the standard for what constitutes "substantial grounds for difference of opinion," and this Court was unable to find a definitive standard for same. However, this Court's own research found two district court opinions stating "[m]ere disagreement with the court's determination does not create a 'substantial grounds for difference of opinion.' ... The grounds for a difference of opinion must arise out of genuine doubt as to the correct legal standard." *Truong v. Kartzman*, 2007 WL 1816048 (D.N.J. 2007) (citations omitted); *Patrick v. Dell Financial Services*, 366 B.R. 378, 386 (M.D. Pa.2007).[11]

In the instant case, Appellants cite two cases – *Robertson v. Isomedix, Inc.*, 28 F.3d 965, 968 (9th Cir. 1994) and *In re Clinton Street Food Corp.*, 254 B.R. 523, 531 (Bankr. S.D. N.Y.Mar. 28, 2000) – which Appellants argue are "actions like the one now before this Court" and in which the prescriptive period found within Rule 60(c) was applied. However, each of the foregoing cases is factually distinguishable, because in each of those cases, *the nature of the relief sought was*

---

[11] Although this Court is not bound by the decisions of other federal district courts, in the absence of a controlling standard in the Fifth Circuit, this Court finds the rationale of these district court cases persuasive.

17

*avoidance of the sale (by at least one party to the litigation), not a claim for damages.* In the instant case, and in the cases cited by the Bankruptcy Court – *In re Taylorcraft* and *American Paper Mills*, *supra* – the nature of the relief sought was a damages remedy only, and in each of those cases, the court determined the prescriptive period for that state's cause of action for fraud was applicable. Appellants have not pointed this Court to any case wherein the time limitation period in Rule 60(c) was applied to a case in which the movant was seeking damages only. Therefore, it appears to this Court Appellants merely have a "disagreement" with the Bankruptcy Court concerning the applicable statute of limitations to be applied in this matter and have not created "genuine doubt as to the correct legal standard" to be applied.

Finally, this Court is well aware that immediate appeals will not necessarily materially advance the ultimate termination of the litigation in either bankruptcy case. Rather, this Court finds the Bankruptcy Court's reasoning was sound, and permitting appeals to proceed at this juncture would merely serve to prolong the case, to the prejudice of the Appellees. This Court finds the more just and efficient course would be for the cases to play out in the Bankruptcy Court and then, should any party wish to appeal, appeal the entire matter to the Fifth Circuit. In short, this Court does not find that the instant cases present exceptional situations that warrant the granting of interlocutory appeals.

### III. Conclusion

Therefore, for the reasons stated herein, the Appellants' motions for leave to appeal the Bankruptcy Court's April 15, 2009 Orders Denying Motions for Summary Judgment in the two separate adversary proceedings filed within the bankruptcy cases entitled *In re: Sunnyside Timber, LLC, et al.*, (Bankruptcy Case No. 00-51233) and *In re Sunnyside Land, LLC, et al.*, (Bankruptcy

07-05041 - #196   File 03/10/10   Enter 03/11/10 14:56:58   Main Document   Pg 18 of 19

Case No. 00-51234), are DENIED.

Pursuant to Rule 8016(a) of the Federal Rules of Bankruptcy Procedure, the Clerk of Court is DIRECTED to prepare, sign and enter judgment upon receipt of and in accordance with this Memorandum Opinion and Order.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___4___ day of March, 2010.

> REBECCA F. DOHERTY
> UNITED STATES DISTRICT JUDGE